# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**COURTNEY LYNNE MEDINA,**

       **Plaintiff,**                      **CIVIL ACTION NO. 15-cv-11895**

       v.                               **DISTRICT JUDGE SEAN F. COX**

**COMMISSIONER OF**                **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Courtney Lynne Medina seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 14) and Defendant's Motion for Summary Judgment (docket no. 17). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.   RECOMMENDATION

For the reasons that follow, it is recommended that the Court should GRANT Plaintiff's Motion for Summary Judgment (docket no. 14) and DENY Defendant's Motion for Summary Judgment (docket no. 17), and REVERSE and REMAND the decision of the Commissioner for an award of benefits.

## II.   PROCEDURAL HISTORY

On August 14, 2009, an application for supplemental security income (SSI) was filed on behalf of the plaintiff, who was then a child under the age of 18. (Tr. 137-39, 147). The application alleged a disability beginning on September 1, 2005. (*Id.*) The Social Security Administration initially denied plaintiff's claim on December 4, 2009, and plaintiff requested a *de novo* hearing. (Tr. 85, 94-96.) On February 9, 2011, plaintiff appeared with counsel and testified at the hearing before Administrative Law Judge (ALJ) Troy Patterson. (Tr. 38-51.) In a March 18, 2011 decision, the ALJ found that plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (Tr. 9-31.) The Appeals Council declined to review the ALJ's decision (Tr. 1-4), and plaintiff commenced an action for judicial review. In a judgment dated October 31, 2012, District Judge Sean F. Cox, adopting a report and recommendation ("R&R") issued by Magistrate Judge Mark A. Randon, remanded the matter to the Commissioner for further proceedings as specified in the R&R. (Case No. 11-15272, Docket no. 15). Judge Cox specifically noted that the ALJ in the March 2011 social security decision failed to give the plaintiff's treating physician, K.J. Raval, M.D., "controlling weight" or explain why the opinion was not entitled to "controlling weight." (*Id.*) By a February 26, 2013 order, the Appeals Council vacated the March 2011 decision and remanded the case for proceeding consistent with the District Court judgment. (Tr. 429-62). A hearing was held and on August 20, 2013, ALJ Kevin J. Detherage issued a subsequent decision also denying plaintiff's claim for SSI. (Tr. 384-413). ALJ Detherage's decision became the Agency's final decision when the Appeal's Council declined to assume jurisdiction. (Tr. 379-

2

383).  Plaintiff then commenced a second action in this Court (docket no. 1), and the parties have filed cross motions for summary judgment.  (Docket nos. 14, 17.)

### III.   HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 14 at 1-11) and the ALJ (Tr. 392-402) each set out a detailed, factual recitation with regard to plaintiff's medical record and the hearing testimony.  Defendant, concurs with plaintiff's recitation of the relevant facts to the extent they are consistent with the facts stated by the ALJ, which the Commissioner adopts.  (Docket no. 17 at 6-7.)  Having conducted an independent review of plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies among these recitations of the record.  Therefore, the undersigned will incorporate the factual recitations by reference.  Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

### IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ initially determined that plaintiff was born on January 23, 1992 and was therefore in the "[a]dolescents (age 12) to attainment of age 18) age group on August 14, 2009, the date of her application."  (Tr. 392.)  The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date, August 24, 2009.  (*Id*.)  Next, the ALJ concluded that before attaining age 18, plaintiff suffered from the following severe impairments: depression; mood disorder; bipolar disorder; post-traumatic stress syndrome; anxiety; borderline personality disorder; and oppositional defiant disorder.  (Tr. 393.)  The ALJ then found that before turning 18, plaintiff did not have an impairment or combination of impairments that met medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id*.)  Because plaintiff did not have an impairment or combination of impairments

that met, medically equaled any listing or functionally equaled the listing, the ALJ determined that plaintiff was not disabled prior to attaining age 18. (20 C.F.R. § 416.924(a)) (Tr. 402.)

Next, the ALJ concluded that plaintiff has not developed any new impairment or impairments since attaining age 18. (Tr. 402.) Since age 18, the ALJ determined that the plaintiff continued to have a severe impairment or combination of impairments; however, during this same time period, plaintiff has not had an impairment or combination of impairments that meets or medically equals a listed impairment. (*Id*.) The ALJ then found that plaintiff had the following residual functional capacity (RFC):

> Since attaining age 18, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can perform unskilled tasks. The claimant cannot perform production rate paced work. She can tolerate occasional routine work changes. The claimant can occasionally interact with the public, coworkers, and supervisors. She will be expected to be "off-task" 8% of the work period.

(Tr. 404.) The ALJ then determined that plaintiff had no relevant past work. (Tr. 408.) Subsequently, in reliance on the VE's testimony, the ALJ determined that based on claimant's age, education, work experience, and RFC, plaintiff was capable of performing a significant number of jobs in the national economy. (*Id*.) Therefore, the ALJ found that plaintiff was not disabled under the Social Security Act at any time from January 22, 2010, the date plaintiff turned 18, through the date of the decision. (Tr. 409.)

V. **LAW AND ANALYSIS**

    A. **Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper

legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

    **B.**    **Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.[1] In the first four steps, plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) The impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If plaintiff's impairments prevented plaintiff from doing past work, the Commissioner, at step five, would consider plaintiff's RFC, age, education, and past work experience to determine if plaintiff could perform other work. If not, plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

C. **Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner]

---

[1] The Social Security Administration has established a three-step sequential evaluation process to determine whether an individual under the age of 18 is disabled (20 CFR § 416.924(a)). At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. At step two, the ALJ must determine whether the claimant has a medically determinable "severe" impairment or combination of impairments that is "severe." And, at step three, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing, or that functionally equals the listings.

(a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed for an award of benefits under sentence four because (1) the ALJ committed reversible error by failing to give "great and controlling weight" to plaintiff's treating psychiatrist which would have eliminated all gainful employment on plaintiff's adult disability claim; (2) the ALJ failed to comply with the Remand order of this Court requiring the ALJ to give controlling weight to the medical restrictions and opinions of the treating physician, or give "good reasons" for rejecting that opinion; and (3) plaintiff was, and remains, totally and permanently disabled and is therefore entitled to an award of benefits under the Social Security Act. (Docket no. 14 at 1-2.)

### 1. The Treating Physician Rule

In her first argument, plaintiff challenges the weight the ALJ gives to her treating psychiatrist, Dr. Kaushik Raval, who has been treating plaintiff for her mental health issues, including hallucinations, significant paranoia, suicidal behavior, and isolating behaviors. On September 16, 2010, a doctor's note from Dr. Raval indicated that plaintiff is "significantly ill and therefore she will not be able to work until she feels better." (Tr. 374). When asked to be

more specific, on January 6, 2011, Dr. Raval completed a medical source statement in which he opined that plaintiff was "markedly limited" or had no useful ability to:

(1) Remember locations and work-like procedures.

(2) Understand and remember very short and simple instructions.

(3) Understand and remember detailed instructions.

(4) Carry out detailed instructions.

(5) Maintain attention and concentration for extended periods of time.

(6) Perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

(7) Sustain an ordinary routine without special supervision.

(8) Work in coordination with or proximity to others without being distracted by them.

(9) Complete a normal workday and work week without interruption from psychologically based symptoms and to perform at a consistent past without an unreasonable number and length of rest periods.

(10) Accept instructions and respond appropriately to criticism from supervisors.

(11) Get along with co-workers or peers without distracting them or exhibiting behavioral extremes.

(Tr. 376-78). Dr. Raval also opined that plaintiff was moderately limited, or that plaintiff's ability was "seriously limited, but not precluded" in her ability to respond appropriately to changes in the work setting, and to set realistic goals or make plans independently of others. (Tr. 378). On July 18, 2011, Dr. Raval again noted his belief that plaintiff was unable to work due to "severe depression and anxiety." (Tr. 564). At this time, Dr. Raval also noted that plaintiff was experiencing visual and auditory hallucinations. (*Id.*)

8

An ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the

9

weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

Here, the ALJ dedicated two pages of his opinion attempting to support his conclusion that Dr. Raval's opinions were not consistent with the overall record and were therefore not entitled to controlling weight. (Tr. 406-407). In terms of Factors One (length and frequency of treatment) and Two (nature and extent of the treatment relationship), the ALJ found that plaintiff engaged in treatment with Dr. Raval in 2010 and that she saw him for medication reviews every few months. At the hearing, plaintiff testified that she was still seeing Dr. Raval, therefore, the ALJ concluded that plaintiff and Dr. Raval had established a treating relationship. The parties do not contest that a treating relationship was formed.

The ALJ, however, concluded that Dr. Raval's opinions were not entitled to "controlling" weight because they did not satisfy the criteria of Factor 3 (supporting evidence); Factor 4 (consistency); and Factor 5 (area of specialty). (Tr. 406.) With respect to his conclusions on these factors, the ALJ opined:

> On September 16, 2010, Dr. Raval provided a report in which he opined that the claimant was "significantly ill" and would "not be able to work" "until she feels better" (11F and 14E). I gave this opinion little weight for the following reasons:

The term "significantly ill" was too vague to be helpful. It likely meant the claimant was not well physically or mentally. However, the term did not work to preclude all activities. I needed more specific terms in order to decide if the claimant was capable of other work. I needed to know how "significant" the claimant's limitations were. I needed to know what Dr. Raval meant by "ill." Without more, these terms were not very helpful and given <u>little weight.</u>

Dr. Raval added that the claimant was "not able to work." This was a conclusion about the claimant's ability to work. Dr. Raval was not qualified to make decisions reserved to the Commissioner. Moreover, Dr. Raval was not a vocational expert. Opinions regarding the existing work that an individual with the claimant's limitations could perform were outside of Dr. Raval's area of expertise. For these reasons, I gave this portion of Dr. Raval's opinion little weight.

Dr. Raval added that the claimant would be able to work "when she felt better." Given the evidence that the claimant was able to go to college, this likely meant that the claimant's condition was expected to improve and she would be able to work in the future. However, the term "when" was too vague. It also appeared that if the claimant were to say she could work, Dr. Raval would agree. The opinion appeared to be made by proxy. It appeared that if the claimant were to say that she felt better and could work, Dr. Raval would agree. For these reasons, I gave this portion of Dr. Raval's opinion little weight.

As mentioned earlier in finding #9, on January 6, 2011, Dr. Raval completed a residual functional capacity assessment in which he opined that the claimant was "markedly" limited in several areas of mental function (11F). I gave this opinion <u>little weight</u>. The term "marked" is a term of art used in the "B criteria" to determine if the claimant's conditions meet or equal the criteria of listed impairments in finding #9. However, the term "marked" is too vague to be helpful in finding #10. As a term of art, it means "more than moderate" hut "less than extreme." The term does not connote specific limitations. It does not preclude mental functional abilities. Moreover, as mentioned earlier, the claimant's conditions presented "less than marked" limitations. Specifically, the claimant was able to take online classes, attend church, go shopping, etc. (Feb-Apr 2011, 11F and 14F).

11

> In July 2011, Dr. Raval opined that the claimant was "unable to work" due to "depression and anxiety." In the next sentence, he adds, "she does take online classes now." As mentioned earlier, the conclusion about if a person is able to work is reserved to the Commissioner. In addition, Dr. Raval failed to specify why he thought the claimant was disabled by depression and anxiety. He likely meant that these would limit the claimant's ability to accomplish her daily activities, ability to socialize, concentrate, persist, etc. However, he failed to say how extensive the limitations were. Without more information, I was unable to give this opinion much weight. Moreover, as mentioned in his own opinion, Dr. Raval knew that the claimant was mentally able to take classes at the time the opinion was assigned. The opinion also appeared to be inconsistent with Dr. Raval's progress notes that revealed improvement when the claimant was compliant with treatment. For these reasons, I gave this opinion little weight.

(Tr. 406-07) (emphasis in original.)

The undersigned has reviewed the ALJ's opinion and agrees with plaintiff that the ALJ has failed to offer sufficiently good reasons as required by 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) when he discounted Dr. Raval's opinion and assigned it "little weight."[2] While the ALJ is under no obligation to discuss every factor in discounting a treating source's opinion, the ALJ here did not articulate sufficiently good reasons to support the weight given. The primary problem with the ALJ's analysis is his treatment of Dr. Raval's January 6, 2011 RFC assessment. In this assessment, Dr. Raval concluded that plaintiff was "markedly" limited in eleven (11) separate mental functional areas. (Tr. 376-78.) Dr. Raval also concluded that plaintiff had moderate limitations in two mental functional areas. (Tr. 378.) The ALJ gave this opinion "little weight" because, according to the ALJ, the word "marked" does not connote specific limitations, or preclude mental functional abilities. (Tr. 407.) Rather, the term is too vague to be helpful. (*Id*.) However, as noted by plaintiff, the medical assessment that Dr. Raval

---

[2] The undersigned is aware that a treating source is not able to make a determination on an issue that is reserved to the Commissioner (e.g., the ultimate decision on whether plaintiff is able to work), and concludes that the ALJ acted reasonably when he discounted Dr. Raval's opinions to the extent he opined in that manner. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see also* 20 C.F.R. § 416.927(d).

completed in January 2011 specifically defines "markedly limited" as meaning: "no useful ability to function in this area." (Tr. 376.) Moreover, "moderately limited" was defined as the "ability to function in this area is seriously limited, but not precluded." (*Id*.) Further, the mental functional assessment that Dr. Raval completed is divided into three separate and detailed areas: (1) understanding and memory; (2) sustained concentration and persistence; and (3) social interaction – thereby, lending additional categorical detail. (Tr. 376-78.) The undersigned concludes that the medical assessment provides sufficiently detailed information for an ALJ to determine whether an individual is precluded in a mental functional area. Particularly when, as here, a treating source in the area of psychiatry is completing the assessment. *See* 20 C.F.R. § 416.927(c)(5) ("[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). The Commissioner argues that plaintiff was able to take on-line classes, attend church, and go shopping; however, this court has consistently held that minimal activities are hardly consistent with eight hours' worth of typical work activities. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 248–49 (6th Cir. 2007) (finding that the plaintiff's daily functions, including her ability to drive, clean her apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news, were not "comparable to typical work activities" and did not justify the ALJ's discrediting her testimony).

Plaintiff's argument that Dr. Raval did not provide an underlying basis for his functional assessment is belied by detailed treatment records that document issues of plaintiff's severe paranoia, as well as visual and auditory hallucinations.[3] (Tr. 372, 373, 375, 562, 563, 566, 568, 570, 572, 576.) Due to the difficulty in controlling plaintiff's psychological symptoms, on

---

[3] Some of the records cited are from after the date of Dr. Raval's January 2011 assessment, but the undersigned includes them to provide additional support that plaintiff's mental functional limitations have persisted.

13

multiple occasions, the record also reflects that Dr. Raval increased or changed plaintiff's medication protocol. (Tr. 248, 270, 370, 373, 375, 566, 568.) Plaintiff's argument is also bolstered by the fact that it does not appear that the ALJ considered plaintiff's medical records as a whole as supporting Dr. Raval's RFC assessment. Specifically, plaintiff has had several hospital admissions that note severe anxiety, together with cutting behavior, suicidal thoughts and ideation. (Tr. 219, 231, 553.) Also, several other physicians have noted symptoms that track Dr. Raval's conclusions. (Tr. 241, 214, 215, 248, 251.) The undersigned further notes that there are no countervailing or contradictory medical opinions in the record to which the ALJ pointed in support of his almost wholesale rejection of the treating physician's opinions. *See Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 862 (6th Cir. 2011).

For the above-stated reasons, the ALJ in the instant matter did not provide the necessary good reasons for discounting Dr. Raval's opinion; as such, the weight the ALJ assigned to Dr. Raval's opinion is not supported by substantial evidence.

### 2. *The Remand Order*

In his second argument, Plaintiff asserts that defendant failed to properly comply with the prior remand order of this court requiring defendant to: (1) apply the four factors outlined in 20 CFR 404.1527; (2) indicate with sufficient specificity the weight he gave to Dr. Raval's opinion, and (3) indicate with sufficient specificity the reasons for that weight. (Tr. 489, 492.) Because the undersigned has already concluded that the ALJ failed to give the requisite good reasons for discounting the opinion of Dr. Raval, there is no need for further analysis.

### 3. *The Proper Remedy*

Last, plaintiff asserts that because she was, and remains, totally and permanently disabled, she is entitled to an award of benefits under the Social Security Act. Plaintiff has

already had two administrative hearings, two Appeals Council actions, and now two district court reviews in this matter.  At both administrative hearings, vocational expert testimony was entered into the record.  When asked to consider functional restrictions consistent with those outlined in Dr. Raval's mental health assessment, including time off-task due to psychological reasons, absences from work, the inability to work in coordination with or in proximity to co-workers or the general public, the need for special supervision, or because of emotional distractions being consistently slower than the average worker, both vocational experts testified that each of those factors would preclude all employment.  Plaintiff contends that the proof of her disability is strong and that there is no significant evidence to contradict the findings of her treating physician, Dr. Raval.  As such, plaintiff says that pursuant to *Mowrey v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985), a remand for further evaluation is not necessary and a reversal for an award of benefits is appropriate here.  The Commissioner argues that if error exists, a new hearing is the appropriate remedy, as the standard set forth in *Kalambach v. Comm'r v. Soc. Sec.*, 409 Fed. App'x 852, 865 (6th Cir. 2011) has not been met.  Indeed, the court has authority to affirm, modify or reverse the Commissioner's decision with or without remanding the cause for rehearing.  *Id*. (citing 42 U.S.C. § 405(g); *Melkonyan v. Sullivan,* 501 U.S. 89, 100, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991)).

     In considering what remedy is appropriate, the undersigned is mindful that "when there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits.  The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration." *Faucher v. Sec'y of Health & Human Servs*., 17 F.3d 171, 175-76 (6th Cir. 1994).  It is appropriate to remand for an award of benefits only when "all essential factual issues have been resolved and the record adequately

establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176; *Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994). This entitlement is established if "the decision is clearly erroneous, proof of di[s]ability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

After considering Dr. Raval's records and opinions, plaintiff's own testimony regarding her mental condition, together with additional record evidence of hospitalizations and severe mental psychosis, the undersigned concludes that there exists strong evidence that plaintiff's combined impairments meet or exceed a listed impairment under the Social Security regulations. As noted above, two vocational experts have testified that accepting Dr. Raval's limitations would preclude all competitive work. And, there effectively is no competing medical evidence, which makes any denial of benefits on remand in this case unsupportable by substantial evidence. As such, the appropriate procedure upon remand is to reverse the decision of the Commissioner and award benefits to the plaintiff.

## VI. CONCLUSION

For the reasons stated herein, the Court should GRANT Plaintiff's Motion for Summary Judgment (docket no. 14) and DENY Defendant's Motion for Summary Judgment (docket no. 17), and REVERSE and REMAND the decision of the Commissioner for an award of benefits.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 7, 2016            s/ Mona K. Majzoub
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: July 7, 2016            s/ Marlena Williams
                               Acting in the absence of Lisa Bartlett
                               Case Manager